VIJAY K. TOKE (CA Bar No. 215079)
(vijay@cobaltlaw.com)
MATTHEW S. SLEVIN (CA Bar No. 287968)
(matt@cobaltlaw.com)

COBALT LLP
918 Parker Street, Bldg. A21
Berkeley, CA 94710
Telephone: (510) 841-9800
Facsimile: (510) 295-2401

DAVID B. OWSLEY II (admitted *pro hac vice*)
(dowsley@stites.com)
MELISSA HUNTER SMITH (admitted *pro hac vice*)
(melissa.smith@stites.com)
MARI-ELISE GATES (admitted *pro hac vice*)
(mgates@stites.com)

STITES & HARBISON PLLC
400 West Market Street, Suite 1800
Louisville, KY  40202-3352
Telephone:     (502) 587-3400
Facsimile:     (502) 587-6391

Attorneys for Plaintiffs
TECH 21 UK LIMITED and
TECH 21 LICENSING LIMITED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TECH 21 UK LIMITED, a UK company and TECH 21 LICENSING LIMITED, a UK company,<br><br>Plaintiffs,<br><br>v.<br><br>SPIGEN INC., a California corporation,<br><br>Defendant. | Case No.: 3:15-cv-05059<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(1) Trade Dress Infringement (15 U.S.C. § 1125(a))**<br><br>**(2) False Designation of Origin (15 U.S.C. §1125(a))**<br><br>**(3) Trade Dress Infringement (California Common Law)**<br><br>**(4) Unfair Business Practices (Cal. Bus. & Prof. Code §17200)**<br><br>**(5) Tortious Interference With Prospective Economic Relations (California Common Law)**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiffs Tech 21 UK Limited and Tech 21 Licensing Limited (collectively "Tech21") by counsel, for its complaint against Defendant Spigen Inc. ("Spigen"), states as follows:

## PARTIES

1. Tech 21 UK Limited and Tech 21 Licensing Limited are UK companies with their principal place of business located in Twickenham, England, and with their primary United States business office located at 3031 Tisch Way, Suite 900, San Jose California 95128. Tech21 UK Limited is the parent company of Tech 21 Licensing Limited.

2. Spigen Inc. is a California corporation with a principal place of business located in Irvine, California.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction to adjudicate the Lanham Act claims in this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and has pendent jurisdiction to adjudicate the remaining claims pursuant to 28 U.S.C. § 1338. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391. Tech21 has an office in this District. The San Jose office is the primary business office for Tech21 in the United States and is in proximity to the Silicon Valley offices of phone case manufacturers and strategic partners of Tech 21 UK Limited. Spigen's infringing products are sold within this District. Apple, which manufactures the iPhones which Tech21's and Spigen's products encase, is located in this District. Given its substantial contacts with this District, Spigen is subject to personal jurisdiction.

## INTRADISTRICT ASSIGNMENT

5. Pursuant to Civil L.R. 3-2(c) and General Order No. 44, this case is properly assigned to any division of this Court, except that pursuant to Civil Local Rules 3-2(g) and 73-1, Plaintiff does not consent to assignment to a Magistrate Judge residing in the Eureka Division.

## FACTS

6. This is an action for willful trade dress infringement, unfair competition, and tortious interference under the Lanham Act and California law.

7. Tech21 is an industry leader and pioneer in designing protective cases for smart phones, with a top three market share in the United States.

8. In late 2010, Tech21 developed a style of protective phone case that includes a combination of distinct elements that are exclusively associated with Tech21.  This combination of elements includes a transparent or translucent case with colored strips within and running along the perimeter of the case and visible through the outer layer.

9. Specifically, Tech21's distinctive and non-functional trade dress for a stylized smart phone case is comprised of translucent or transparent material that contains colored inserts aligned within the perimeter of the case that is visible through the outer layer of the case ("Tech21's Trade Dress") and has become exclusively associated with Tech21.

10. Tech21's Trade Dress is non-functional and has acquired secondary meaning.

11. Since at least as early 2011, Tech21 has marketed and sold protective phone cases in the United States featuring its distinctive trade dress.

12. Examples of Tech21 products launched in 2014 for the iPhone 6 appear below:

*Tech21's Classic Check for the iPhone 6*



*Tech21's Evo Mesh for the iPhone 6*



*Tech21's Classic Impact Frame for the iPhone 6*

 

///

///

FIRST AMENDED COMPLAINT

*Tech21's Classic Shell for the iPhone 6*



*Tech21's Evo Check for the iPhone 6*



5
FIRST AMENDED COMPLAINT

13. Tech21's Trade Dress has acquired distinctiveness, is broadly known, and has become exclusively associated with Tech21 through Tech21's substantially exclusive and continuous use in commerce in connection with phone cases.  Tech21's Trade Dress has been in continuous, extensive, and exclusive commercial use in connection with Tech21's products for approximately 5 years.

14. Tech21's Trade Dress has been used for phone cases sold in commerce throughout the United States since at least early 2011.

15. Publications have commented on Tech21's unique style for years.  For example, an article published May 24, 2012 titled "Tech21 Launches Unique Line Of iPhone Cases In U.S." (http://appadvice.com/appnn/2012/05/tech21-launches-unique-line-of-iphone-cases-in-u-s)   states: "At the core of Tech21's unique approach to device protection is their signature Impact Band. This orange strip inside helps absorb impact at the molecular level, using a non-Newtonian polymer (like cornstarch and water) that has the strength of Otterbox, but with a significantly different design."

16. Tech21's Trade Dress of a transparent or translucent case with colored strips within and running along the perimeter of the case and visible through the outer layer is a non-functional visual design aesthetic meant to signal the presence of, and display, Tech21's signature Impact Band and thus cement the product's association with Tech21's unique brand of cases across multiple distinct product designs for various electronic devices.

17. Below is a picture, taken from the abovementioned article "Tech21 Launches Unique Line Of iPhone Cases In U.S.," illustrating Tech21's Trade Dress within a prior case design for an earlier version of the iPhone in 2012.



18. Tech21 is a global strategic partner of Apple, and its products are broadly sold in the Apple Stores worldwide.

19. Tech21's products have also been sold across the United States at retail stores such as Best Buy, Target, T-Mobile, Verizon, US Cellular, Apple, and Sprint.

20. Tech21 has achieved substantial sales in the United States of products featuring its Trade Dress.

21. On June 16, 2014, Tech21 filed an application with the USPTO for registration of the mark TECH21, U.S. Serial No. 86/310,447, for use on or in connection with cases for lap-top computers, tablet computers, mobile phones and MP3 players; protective covers for lap-top computers, tablet computers, mobile phones and MP3 players; covers, sleeves, cases and screen protectors for use with mobile and cell phones, lap-top computers, tablet computers and MP3 players; cases for apparatus for receiving, recording or transmitting sound or images; protective covers for computers, telephones or apparatus for receiving, recording or transmitting sound or images; computer carrying cases; bags for laptop computers; and computer cases in Class 9 and for use in connection with online retail store services featuring cases for lap-top computers, tablet computers, mobile phones and MP3 players, protective covers for lap-top computers, tablet computers, mobile phones and MP3 players, covers, sleeves, cases and screen protectors for use with mobile and cell phones, lap-top computers, tablet computers and MP3 players; and online retail store services featuring cases for apparatus for receiving, recording or transmitting sound or images, protective covers for computers, telephones or apparatus for receiving, recording or transmitting sound or images, computer carrying cases, bags for laptop computers, computer cases in Class 35.

22. At some point shortly before or after Apple's release of the iPhone 6s on September 25, 2015, Spigen launched a product line called the "Ultra Hybrid TECH" for the iPhone 6s/6.

23. The Spigen Ultra Hybrid TECH products (hereinafter the "Infringing Spigen Products") are deliberate copies of Tech21's Trade Dress and constitute a willful infringement of that trade dress.

24. Examples of the Spigen Ultra Hybrid TECH products for the iPhone 6s appear below:

*Spigen's Ultra Hybrid TECH for the iPhone 6s*





25. The Infringing Spigen Products feature all of the distinctive elements of Tech21's Trade Dress, and its imitative phone cases are visually similar, but of substantially inferior quality. Purchase of the Infringing Spigen Products would result in consumer injury as a result of the substantially inferior quality of such products.

26. Spigen's inclusion of the capitalized "TECH" in the name *Ultra Hybrid TECH* is calculated to create an association with Tech21 and cause consumer confusion as to whether Tech21 is the source of the Ultra Hybrid TECH product, which copies Tech21's Trade Dress.

27. Use of the capitalized TECH in the name *Ultra Hybrid TECH* is likely to create consumer confusion with the TECH21 mark.

28. On September 18, 2015, Spigen obtained U.S. Copyright registration VA0001970816, titled "Spigen iPhone 6s Ultra Hybrid Tech Case." The application lists a date of creation as 2015 and a date of publication of September 11, 2015.

29. Spigen's Copyright application falsely claimed the iPhone 6s Ultra Hybrid Tech Case as an original work created by Spigen in 2015 when in fact the case was a deliberate imitation of Tech21 cases launched in 2014 in connection with the iPhone 6.

30. After launching the Infringing Spigen Products, Spigen approached at least one of Tech21's largest retailers, asserting that its Ultra Hybrid TECH cases were substantially identical to Tech21's cases and could replace Tech21's products at a lower retail price.

31. Spigen engaged in such meetings, knowing of Tech21's connections to the retailer, with the intent of disrupting that relationship. Spigen's conduct was unlawful and caused disruption to the business relationship between Tech21 and that retailer as well as potential end-use purchasers.

32. Spigen has obtained product placement for the Ultra Hybrid TECH cases with at least one large U.S. retailer that also features Tech21 products.

33. The Ultra Hybrid TECH cases have sold and are currently being sold in the same channels of commerce as the Tech21 cases, to the detriment and harm of Tech21's prospective economic relationships, brand, and goodwill.

34. As of the filing of this First Amended Complaint, the Ultra Hybrid TECH cases appear to be sold exclusively on the internet in the United States.

35. Internet listings in the United States for the Ultra Hybrid TECH cases do not illustrate product packaging, but rather only feature a low-resolution image of the phone case that prominently displays Tech21's Trade Dress, along with multiple inclusions of the capitalized language "TECH," so as to create confusion with the TECH21 mark.

36. This deceptive method of internet sales, with no distinctive product packaging, further enhances the likelihood of consumer confusion.

37. For example, the following image is taken from www.BestBuy.com:



38.     This ongoing deceptive use and infringement of Tech21's Trade Dress and marks has resulted in a likelihood of confusion as to source, affiliation, or sponsorship between Spigen's infringing phone cases and Tech21's Trade Dress, and risks irreparable harm to Tech21's business, goodwill, and customer relationships.

39.     The Ultra Hybrid TECH's mimicking of Tech21's Trade Dress is so obvious that multiple publications commented on the similarity when reviewing the Ultra Hybrid TECH. For instance, the following excerpt comes from a CNET review dated December 17, 2015 (www.cnet.com/au/pictures/best-iphone-6s-and-iphone-6-cases/7/):

> **Spigen Ultra Hybrid Tech Series**
>
> Spigen's Ultra Hybrid Tech Series reminds me of Tech 21's cases -- both in terms of look and feel. With a clear back, it comes in a variety of trim colors and offers decent protection (it's "military-grade" drop tested) in a slim case that has some nice grip to it. Depending on the color, you're looking at a price of $15-$19.

40.     Another reviewer, in a video published by TechnoLightning on or about October 3, 2015, purported to conduct a side-by-side comparison of the Ultra Hybrid TECH and the Tech21 Classic Frame for the iPhone 6s. The video's narrator places the cases together and states "you can see that they look very similar with the clear or opaque back on the rear of the cases." An image from the video appear below:



11
FIRST AMENDED COMPLAINT

41. In advertisements on Spigen's website (www.spigen.com) shortly after the product's launch in September 2015, Spigen embedded the aforementioned TechnoLightning video comparing Tech21's Classic Frame to the Ultra Hybrid TECH for the iPhone 6s. At points in the video, the narrator holds the Ultra Hybrid TECH case while giving commentary on the Tech21 case, and vice versa, creating confusion as to which case was which. At some point shortly before this lawsuit, Spigen removed the video from its website. It is unknown whether the video was independently created by TechnoLightning, or whether Spigen financed or otherwise orchestrated production of the video for purposes of fostering an association with Tech21's products.

## COUNTS

42. Tech21 incorporates by reference and hereby realleges as if fully set forth herein, the above paragraphs for each of the following Counts.

## COUNT 1 - TRADE DRESS INFRINGEMENT

## (15 U.S.C. § 1125(a))

43. Spigen has used in commerce trade dress which is confusingly similar to Tech21's Trade Dress for mobile phone cases, and Spigen's use of a trade dress which is confusingly similar to Tech21's Trade Dress for mobile phone cases is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Spigen with Tech21, or as to the origin, sponsorship, or approval of Spigen's goods by Tech21 in violation of 15 U.S.C. § 1125(a).

44. Spigen's acts as alleged herein were and are committed with the intent to confuse the public into thinking that there is an affiliation or association with or a sponsorship, or approval of, Spigen's mobile phone cases by Tech21. Spigen's acts of trade dress infringement have deceived consumers and are likely to continue to deceive a substantial segment of the consuming public, which is likely to influence purchasing decisions.

45. Spigen's aforesaid acts were done with knowledge and in willful disregard of Tech21's exclusive rights in trade dress. Spigen's acts have injured and continue to injure Tech21 in an amount of damages to be proven at trial.

46. Tech21 has been irreparably damaged and is continuing to be irreparably damaged by Spigen's willful infringement of Tech21's Trade Dress for which Tech21 has no adequate remedy

at law.  Tech21 is entitled under Title 15 United States Code §1116 to an injunction against Spigen's continuing infringement.

47. Tech21 is entitled to an award of Spigen's profits, damages caused by Spigen's actions, and the costs of this action under Title 15 United States Code §1117.  Because Spigen's wrongful acts alleged herein are willful, this is an extraordinary case entitling Tech21 to treble damages and attorneys' fees under Title 15 United States Code §1117(b).

## COUNT 2 – FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

48. Spigen has used in commerce without Tech21's consent a mark that is confusingly similar to Tech21's TECH21 mark in combination with trade dress that is confusingly similar to Tech21's Trade Dress for mobile phone cases. Spigen's use of the mark TECH in combination with trade dress which is confusingly similar to Tech21's Trade Dress for mobile phone cases is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Spigen with Tech21, or as to the origin, sponsorship, or approval of Spigen's goods by Tech21 in violation of 15 U.S.C. § 1125(a).

49. Spigen's acts as alleged herein were and are committed with the intent to confuse the public into thinking that there is an affiliation or association with or a sponsorship, or approval of Spigen's mobile phone cases by Tech21.  Spigen's acts of false designation of origin and trademark infringement have deceived consumers and are likely to continue to deceive a substantial segment of the consuming public, which is likely to influence purchasing decisions.

50. Spigen's aforesaid acts were done with knowledge and in willful disregard of Tech21's exclusive rights in trade dress.  Spigen's acts have injured and continue to injure Tech21 in an amount of damages to be proven at trial.

51. Tech21 has been irreparably damaged and is continuing to be irreparably damaged by Spigen's willful infringement of Tech21's TECH21 trademark for which Tech21 has no adequate remedy at law.  Tech21 is entitled under Title 15 United States Code §1116 to an injunction against Spigen's continuing infringement.

52. Tech21 is entitled to an award of Spigen's profits, damages caused by Spigen's actions, and the costs of this action under Title 15 United States Code §1117. Because Spigen's wrongful acts alleged herein are willful, this an extraordinary case entitling Tech21 to treble damages and attorneys' fees under Title 15 United States Code §1117(b).

## COUNT 3 - TRADE DRESS INFRINGEMENT
## (CALIFORNIA COMMON LAW)

53. Spigen has engaged and is continuing to engage in acts of trademark and trade dress infringement in violation of the common law of California.

54. The aforesaid acts by Spigen were with knowledge and in willful disregard of Tech21's prior rights in its trade dress and other marks. Spigen's acts have injured Tech21 in an amount of damages to be proven at trial.

55. Spigen's acts of unfair competition have caused and will continue to cause financial damage to Tech21 and irreparable injury for which Tech21 has no adequate remedy at law. Spigen's acts have irreparably harmed Tech21 and will continue to harm Tech21 unless enjoined by this Court.

## COUNT 4 - UNFAIR COMPETITION
## (CAL. BUS. & PROF. CODE § 17200)

56. Spigen has attempted to encroach upon the business of Tech21 by use of confusingly similar trade dress and a confusingly similar trademark with the intention of misleading the public.

57. Spigen's acts, as alleged above, constitute unlawful and/or unfair business practices in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*. Spigen's acts are unlawful and/or unfair under the UCL.

58. Spigen's acts of unfair competition in the State of California have caused Tech21 irreparable injury. Unless said conduct is enjoined by this Court, Spigen will continue and expand those activities to the continued and irreparable injury of Tech21.

59. The aforesaid acts by Spigen were with knowledge and in willful disregard of Tech21's prior rights in Tech21's Trade Dress and marks. Spigen's acts have injured Tech21 in an amount to be proven at trial.

60. Spigen's acts of unfair competition have caused and will continue to cause financial damage to Tech21 and irreparable injury for which Tech21 has no adequate remedy at law. Spigen's acts have irreparably harmed Tech21 and will continue to harm Tech21 unless enjoined by this Court.

**COUNT 5 – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**

**(CALIFORNIA COMMON LAW)**

61. Spigen maliciously, intentionally, knowingly, improperly, and without justifiable cause interfered, and continues to interfere, with the business relations and expectancies between Tech21 and its existing and prospective clients by deceptively using Tech21's Trade Dress and by contacting Tech21's retail customers in an effort to disrupt and undercut Tech21's commercial relationships by substituting Spigen's infringing products.  Spigen knew that these retailers sold Tech21 products and specifically targeted them because of that relationship with the intention of disrupting that relationship.  Specifically, Spigen tortiously contacted these retailers for the specific purpose of undercutting Tech21 by marketing the inferior Infringing Spigen Products as the equivalent of Tech21's products.  These wrongful activities resulted in a disruption of the economic relationship between Tech21 and the retailers.

62. As a direct and proximate result of the actions of Spigen, Tech21 has been injured and suffered damages, and it continues to suffer damages.

63. Tech21 is entitled to recover from Spigen all actual damages resulting from this tortious interference as well as punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Tech21 prays:

1. That this Court enter a judgment that Spigen's conduct violated Tech21's rights under the Lanham Act and California law;

2. That this Court grant temporary, preliminary, and permanent injunctive relief;

3. That this Court enjoin Spigen, its affiliates, agents, employees, servants, parents, successors, and assigns, and all other person acting in concert, participation or combination with

Spigen from using all designs and designations confusingly similar to, or identical to Tech21's Trade Dress or other marks in any manner;

4. That this Court require Spigen and its affiliates to remove from keywords, metatags, or other source code for Spigen's various websites and marketing material any and all references to Tech21, the Infringing Spigen Products or any other confusingly similar designation;

5. That Tech21 be awarded its actual damages;

6. That Tech21 be awarded a disgorgement of all profits of Spigen and its affiliates in connection with the Infringing Spigen Products;

7. That Tech21 be awarded the maximum damages available under the Lanham Act, including treble damages;

8. That Tech21 be awarded the maximum punitive damages available under California law;

9. That this Court require Spigen to pay Tech21's attorneys' fees and costs;

10. That this Court grant Tech21 such other and further relief as it should deem just and proper.

Dated: January 18, 2016                    By:   /s/  Vijay K. Toke

Vijay K. Toke
COBALT LLP

David B. Owsley II (admitted *pro hac vice*)
Melissa Hunter Smith (admitted *pro hac vice*)
Mari-Elise Gates (admitted *pro hac vice*)
STITES & HARBISON PLLC

Attorneys for Plaintiffs
TECH 21 UK LIMITED and
TECH 21 LICENSING LIMITED

/ / /

/ / /

FIRST AMENDED COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: January 18, 2016

By:   /s/ Vijay K. Toke

Vijay K. Toke
COBALT LLP

David B. Owsley II (admitted *pro hac vice*)
Melissa Hunter Smith (admitted *pro hac vice*)
Mari-Elise Gates (admitted *pro hac vice*)
STITES & HARBISON PLLC

Attorneys for Plaintiffs
TECH 21 UK LIMITED and
TECH 21 LICENSING LIMITED

17
FIRST AMENDED COMPLAINT