VIJAY K. TOKE (CA Bar No. 215079)
(vijay@cobaltlaw.com)
MATTHEW S. SLEVIN (CA Bar No. 287968)
(matt@cobaltlaw.com)
COBALT LLP
918 Parker Street, Bldg. A21
Berkeley, CA 94710
Telephone: (510) 841-9800
Facsimile: (510) 295-2401

DAVID B. OWSLEY II (admitted *pro hac vice*)
(dowsley@stites.com)
MARI-ELISE GATES PAUL (admitted *pro hac vice*)
(mgates@stites.com)
STITES & HARBISON PLLC
400 West Market Street, Suite 1800
Louisville, KY 40202-3352
Telephone: (502) 587-3400
Facsimile: (502) 587-6391

MELISSA HUNTER SMITH (admitted *pro hac vice*)
(melissa.smith@stites.com)
STITES & HARBISON PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219
Telephone: (615) 782-2283
Facsimile: (615) 742-0731

Attorneys for Plaintiffs and Counter-defendants
TECH 21 UK LIMITED and
TECH 21 LICENSING LIMITED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| TECH 21 UK LIMITED, a UK company and TECH 21 LICENSING LIMITED, a UK company,<br><br>Plaintiffs,<br><br>v.<br><br>SPIGEN INC., a California corporation,<br><br>Defendant.<br><br>And Related Counterclaims. | Case No.: 3:15-cv-05059-RS<br><br>**JOINT CASE MANAGEMENT STATEMENT AND PROPOSED ORDER** |

The parties to the above-entitled action jointly submit this JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER pursuant to the Standing Order for All Judges of the Northern District of California dated July 1, 2011 and Civil Local Rule 16-9.

**I.** **Jurisdiction & Service**: There are no existing issues regarding personal jurisdiction or venue, and no parties remain to be served.

**II.** **Facts**:

Plaintiffs' Statement:  Plaintiffs and Counter-defendants Tech21 UK Limited and Tech21 Licensing Limited ("Tech21" or "Plaintiffs"), filed the instant action against Defendant and Counterclaimant Spigen, Inc. ("Spigen" or "Defendant") for willful trade dress infringement under federal and state law, false designation of origin under federal and state law, unfair business practices under California law, and tortious interference with prospective economic relations under California state law.

Tech21 is an industry leader and pioneer in designing protective cases for smart phones, with a top three market share in the United States. In late 2010, Tech21 developed a style of protective phone case that includes a combination of distinct elements that are exclusively associated with Tech21.  This combination of elements includes a transparent or translucent case with colored strips within and running along the perimeter of the case and visible through the outer layer.  Tech21's distinctive and non-functional trade dress (which has acquired secondary meaning) for a stylized smart phone case, comprised of translucent or transparent material that contains colored inserts aligned within the perimeter of the case that is visible through the outer layer of the case ("Tech21 Trade Dress"), has become exclusively associated with Tech21.  Tech21 has marketed and sold protective these phone cases in the United States featuring its distinctive Tech21 Trade Dress since at least as early as 2011.  The Tech21 Trade Dress has achieved notoriety and has been featured in multiple news sources, and Tech21 has had substantial sales in the United States of products featuring its Tech21 Trade Dress. Tech21 is also the owner of the mark TECH21.

Tech21 is a global strategic partner of Apple and its products are broadly sold in the Apple Stores worldwide.  Tech21's products have also been sold across the United States at retail stores such as Best Buy, Target, T-Mobile, Verizon, US Cellular, Apple, and Sprint.

1    At some point shortly before or after Apple's release of the iPhone 6s on September 25, 2015, Spigen launched a product line called the "Ultra Hybrid TECH" for the iPhone 6s/6. The Spigen Ultra Hybrid TECH products (hereinafter the "Infringing Spigen Products") are deliberate copies of Tech21 products featuring the Tech21 Trade Dress and constitute a willful infringement of that trade dress. These Infringing Spigen Products feature all of the distinctive elements of the Tech21 Trade Dress, and its imitative phone cases, though visually similar, are of substantially inferior quality. Purchase of the Infringing Spigen Products would result in consumer injury as a result of the substantially inferior quality of such products. Additionally, inclusion of the capitalized "TECH" in the name Ultra Hybrid TECH is calculated to create an association with Tech21 and cause consumer confusion as to whether Tech21 is the source of the Ultra Hybrid TECH product, which copies Tech21's Trade Dress. Use of the capitalized TECH in the name Ultra Hybrid TECH is likely to create consumer confusion with the TECH21 mark.

On September 18, 2015, Spigen obtained U.S. Copyright registration VA0001970816, titled "Spigen iPhone 6s Ultra Hybrid Tech Case." The application lists a date of creation as 2015 and a date of publication of September 11, 2015. This Copyright application falsely claimed the iPhone 6s Ultra Hybrid Tech Case as an original work created by Spigen in 2015 when in fact the case was a deliberate imitation of Tech21 cases launched in 2014 in connection with the iPhone 6. After launching the Infringing Spigen Products, Spigen approached at least one of Tech21's largest retailers, asserting that its Ultra Hybrid TECH cases were substantially identical to Tech21's cases and could replace Tech21's products at a lower retail price. Spigen engaged in such meetings, knowing of Tech21's connections to the retailer, with the intent of disrupting that relationship. Spigen's conduct was unlawful and caused disruption to the business relationship between Tech21 and that retailer as well as potential end-use purchasers. Spigen obtained product placement for the Ultra Hybrid TECH cases with at least one large U.S. retailer that also features Tech21 products. Tech21 intends to investigate Spigen's targeting of Tech21's retailers through the discovery process. The Ultra Hybrid TECH cases have sold and are currently being sold in the same channels of commerce as the Tech21 cases, to the detriment and harm of Tech21's prospective economic relationships, brand, and goodwill.

1    As of the filing of the First Amended Complaint, the Ultra Hybrid TECH cases appeared to
2 be sold exclusively on the Internet in the United States. Internet listings in the United States for the
3 Ultra Hybrid TECH cases do not illustrate product packaging, but rather only feature a low-
4 resolution image of the phone case that prominently displays the Tech21 Trade Dress, along with
5 multiple inclusions of the capitalized language "TECH," so as to create confusion with the TECH21
6 mark and Tech21 products.  This deceptive method of Internet sales, with no distinctive product
7 packaging, further enhances the likelihood of consumer confusion.

8    The ongoing deceptive use and infringement of the Tech21 Trade Dress and marks has
9 resulted in a likelihood of confusion as to source, affiliation, or sponsorship between Spigen's
10 infringing phone cases and Tech21's Trade Dress, and risks irreparable harm to Tech21's business,
11 goodwill, and customer relationships.  Spigen's intentional targeting of Tech21's retailers for the
12 specific purpose of undercutting Tech21 by marketing the inferior Infringing Spigen Products as the
13 equivalent of Tech21's products resulted in a disruption of the economic relationship between
14 Tech21 and the retailers and constitutes intentional interference with prospective economic relations
15 under California law.

16    <u>Defendant's Statement:</u> Plaintiffs filed the instant action against Spigen for willful trade
17 dress infringement under federal and state law, false designation of origin under federal and state
18 law, unfair business practices under California law, and tortious interference with prospective
19 economic relations under California state law.  Spigen has answered and denied the allegations in
20 the First Amended Complaint.  Moreover, Spigen brought counterclaims including (1) Declaratory
21 Judgment of Non-Infringement of Trade Dress, and (2) Declaratory Judgment: Lack of Protectable
22 or Enforceable Trade Dress in Counter-Defendants' Designs.

23    Spigen is a leading manufacturer and innovative designer of protective cases for mobile
24 electronic devices and smart phones. Spigen sells its products nationwide across the United States
25 on Amazon.com, Ebay.com, Spigen.com, and at other retail locations.  Tech21 is alleging that the
26 product line named Ultra Hybrid TECH is infringing on its alleged trade dress.

27    Tech21's alleged trade dress is not registered.  Further, Tech21's alleged trade dress is
28 product design trade dress and is not product packaging trade dress.  Thus, Tech21 needs to prove

that the alleged trade dress has acquired secondary meaning, that the alleged trade dress is distinctive, and that the alleged trade dress is non-functional. However, Tech21 will not be able to prove any of these elements. The design in Tech21's alleged trade dress and the phrase "TECH" is widely used in the portable electronic device protector industry. Additionally, since Tech21 has used the alleged trade dress for less than 5 years, Tech21 will not be able to show that it acquired secondary meaning. Further, Tech21 will not be able to prove that consumers will associate the alleged trade dress with Tech21, that Tech21 used the alleged trade dress to increase its sales, that its use of the alleged trade dress was exclusive, that Spigen intentionally copied Tech21, and that there was actual confusion between Tech21 products and Spigen products. Moreover, Tech21's alleged trade dress design is functional. The inner strip of the alleged trade dress functionally absorbs and dissipates impact force and stops the force from passing to the mobile electronic device or smart phone.

Finally, there is no likelihood of confusion between Spigen's product and Tech21's products. Spigen has been a long time manufacturer of smart phone cases and accessories and creates high quality products and consumers are well aware of its products and reputation. Tech21 does not have any enforceable trade dress or mark that it can rely on for any of its claims.

**III.     Legal Issues:** The legal issues in this case include, among others:

A.      Whether Spigen's offering for sale and sale of the Ultra Hybrid TECH mobile phone case constitutes infringement of the Tech21 Trade Dress under 15 U.S.C. § 1125(a).

B.      Whether Spigen's offering for sale and sale of the Ultra Hybrid TECH mobile phone case under the mark Ultra Hybrid TECH constitutes a false designation of origin under 15 U.S.C. § 1125(a).

C.      Whether Spigen's offering for sale and sale of the Ultra Hybrid TECH mobile phone constitutes trade dress infringement under California common law.

D.      Whether Spigen's offering for sale and sale of the Ultra Hybrid TECH mobile phone under the mark Ultra Hybrid TECH constitutes unfair competition under Cal. Bus. & Prof. Code § 17200, *et. seq*.

/ / /

  E. Whether Spigen's conduct of targeting specific retailers which sold Tech21 products constitutes tortious interference with prospective economic relations under California law;

  F. Whether Spigen's trademark infringement was willful;

  G. Whether Spigen's trade dress infringement was willful.

  H. Whether Tech21's unregistered alleged trade dress is valid and protectable.

  I. Whether Tech21's unregistered alleged trade dress acquired secondary meaning.

  J. Whether Tech21's unregistered alleged trade dress is generic.

  K. Whether Tech21's unregistered alleged trade dress is descriptive or merely descriptive without secondary meaning.

  L. Whether Tech21's unregistered alleged trade dress is functional.

  M. Whether the unregistered mark "TECH" is Tech21's valid, protectable mark.

  N. Whether the unregistered mark "TECH" is descriptive or merely descriptive.

  O. Whether the unregistered mark "TECH" is generic.

  The parties do not anticipate any amendment to the legal issues in dispute at this time, but the parties reserve the right to amend this portion of the Joint Case Management Statement if further legal issues do arise.

**IV.** **Motions:** There are currently no pending motions on file or anticipated to be on file.

**V.** **Amendment of Pleadings:** The parties do not anticipate any amendment to the pleadings at this time, but the parties reserve the right to amend the pleadings with additional claims and defenses following fact discovery.

**VI.** **Evidence Preservation**: The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps to preserve evidence relevant to the issues reasonably evident in this action.  The parties confirm that they have taken appropriate and reasonable measures to preserve relevant evidence. The parties are discussing on ESI protocol. The following is the agreed upon ESI protocol:

/ / /

/ / /

A. ESI Production Format

1. ESI is to be produced in 300 DPI Group IV Grayscale Tagged Image File Format (.TIFF or .TIF) files. TIFF files shall be produced in single-page format along with image load files (.OPT file and .LFP file). All documents are to be provided with per document searchable text (.TXT) files, and such text files contain the full text extraction. In the event a document is scanned into TIFF format, the text file should contain that document's OCR text. If a document is redacted for privilege or to comply with foreign privacy regulations, the document will undergo a second OCR to omit the extracted text behind the redaction.

1a. If color files are required, produce them in JPG format.

2. During the process of converting ESI from the electronic format of the application in which the ESI is normally created, viewed and/or modified to TIFF, metadata values should be extracted and produced in a load file ("metadata load file").

3. To the extent they are available, the metadata values that are to be extracted and produced in the metadata load files (.DAT file using concordance standard delimiters) are:

   a. Metadata from Email:

      i. Email Subject
      ii. Email Author
      iii. Email Recipient
      iv. Email CC
      v. Email BCC
      vi. Email Received Date: MM/DD/YYYY
      vii. Email Received Time: HH:MM:SS
      viii. Email Sent Date: MM/DD/YYYY
      ix. Email Sent Time: HH:MM:SS
      x. Time Offset Value (indicate which time zone the data is set to when processed)

   b. Metadata from Electronic Files:

      i. File Name
      ii. File Author
      iii. File Created Date: MM/DD/YYYY
      iv. File Created Time: HH:MM:SS
      v. File Modified Date: MM/DD/YYYY
      vi. File Modified Time: HH:MM:SS
      vii. File Extension
      viii. Has Hidden Data: Yes or blank (Hidden data refers not only to Excel files with hidden columns, rows, spreadsheets, etc., but also PowerPoint files in which comments or other fields may be hidden.)

   c. Data for both Email and Electronic Files:

      i. Custodian
      ii. MD5 Hash

    4.      For any documents that contain an attachment (for example, email), to the extent available, the following fields should be produced as part of the metadata load file to provide the parent/child or parent/sibling relationship:

        a.      Production Number Begin
        b.      Production Number End
        c.      Production Attachment Range Number Begin
        d.      Production Attachment Range Number End
        e.      Attachment Name
        f.      Production Doc Page Count

    5.      The parties may suppress container files (.zip, .pst, .rar) that do not reflect substantive information prior to production, but must produce the remainder of those responsive, non-privileged document families found within the container file, including any emails to which that container file is attached. Similarly, the parties may suppress any non-substantive images extracted from email documents (e.g., logos, icons) prior to production.

    6.      The parties may de-duplicate identical ESI within a custodian's files ("vertical") at the point of data processing, then de-duplicate identical ESI across custodians ("horizontal") at the point of production. If horizontal de-duplication is employed, the producing party must provide information regarding which custodian's files de-duplicated out through an "all custodians" metadata load file, which may be provided at the conclusion of rolling productions.

    7.      Production of Excel and Database ESI: Unless such materials contain privileged or information requiring redaction due to legal obligations, to the extent that the file is of a size and type that renders native production practicable, MS-Excel spreadsheets and databases shall be produced in native format with a TIFF placeholder. The metadata load file shall contain a link to the produced MS-Excel spreadsheets and databases via data values called "Native Link." The Native Link values should contain the full directory path and file name of the MS-Excel spreadsheet or database as contained in the produced media. To the extent that other databases or enterprise systems (e.g., Hive, SQL Server databases, etc.) contain information that is responsive and discoverable, such ESI may be produced in a mutually agreeable format to be discussed and determined by the parties as needed.

    8.      Bates Numbering: Bates numbers shall be unique IDs with a prefix that can be readily attributed to the producing party. Bates numbering should be sequential. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note. Bates numbering and any confidentiality designation should be electronically branded on each produced TIFF image of ESI but should not be included in the extracted text of ESI.

**VII.**    **Disclosures**: Pursuant to stipulation among the parties, initial disclosures will be exchanged on May 31, 2016.

**VIII.**    **Discovery**: Presently, neither party has propounded any discovery on the other party in this action. The parties anticipate that discovery will be propounded by each of the parties related to

Tech21's claims, as well as related to Spigen's defenses and counterclaims.  The parties propose that the discovery limitations set forth in the Federal Rules of Civil Procedure govern this matter.  The parties may stipulate to further variations from these discovery limitations without making an application to the court.

The Parties agree to follow the Court's Stipulated Protective Order for Standard Litigation, with a few minor amendments, including the addition of a level of protection for documents to be viewed by Attorneys' Eyes Only.

<u>Plaintiffs' Statement</u>: Tech21 expects to propound discovery relevant to its claims and Spigen's defenses and counterclaims in this action on subjects including but not limited to the following:

- Spigen's conception and design of the trade dress embodied in the Ultra Hybrid TECH case;
- Spigen's first awareness of Tech21;
- Spigen's first awareness of the trade dress embodied in Tech21's mobile phone cases;
- Spigen's advertising and marketing, including advertising and marketing of the Ultra Hybrid TECH case;
- Spigen's creation, selection, and adoption of the Ultra Hybrid TECH mark;
- Spigen's decision to use a mark in connection with mobile phones that includes the component TECH;
- Spigen's financial information and data, including revenue generated from sales of the Ultra Hybrid TECH case;
- Identities and locations of persons in Spigen's business;
- All trademark searches or other inquiries performed by or on behalf of Spigen related to use of the component TECH;
- Spigen's decision to seek or obtain intellectual property protection for the design in the Ultra Hybrid TECH case;
- Spigen's contact with retailers of Tech21 products;
- Spigen's marketing of its Ultra Hybrid TECH mark;
- The manufacturing process of the Ultra Hybrid TECH case;
- Any and all instances or evidence of consumer confusion;
- Third party perception and use of the terms "tech" in connection with mobile phone cases;

- Spigen's actions which constitute tortious interference with Tech21's business relationships; and
- Spigen's actions which constitutes willful trademark and/or trade dress infringement

<u>Defendant's Statement</u>: Spigen expects to propound discovery relevant to its defenses and counterclaims as well as Tech21's claims and defenses to Spigen's counterclaims in this action on subjects including, but not limited to, the following:

- Tech21's conception and design of their alleged trade dress;
- Tech21's advertising and marketing of its products utilizing its alleged trade dress;
- Tech21's marketing channel for its products utilizing its alleged trade dress;
- Tech21's financial records, including revenue generated from sales of products utilizing the alleged trade dress;
- Tech21's decision not to register their alleged trade dress with the USPTO;
- Identities and locations of persons in Tech21's business;
- All trademark searches or other inquiries performed by or on behalf of Tech21 related to its alleged trade dress;
- Tech21's contact with retailers of Spigen products;
- Tech21's marketing of its products utilizing the alleged trade dress;
- The manufacturing processes of Tech21's products utilizing the alleged trade dress;
- Any and all instances or evidence of consumer confusion;
- Any and all instances of Tech21 having accused another party of infringing on their alleged trade dress;
- Any and all instances where Tech21's business relationships were affected by Spigen and its marketing and sales of its products;
- Tech21's registration or use of the mark "TECH."

IX. **<u>Class Actions</u>**: Not applicable.

X. **<u>Related Cases</u>**: Not applicable.

XI. **<u>Relief</u>**:

<u>Plaintiffs' Statement</u>: Tech21 seeks a Judgment that:

A. Spigen's conduct violated Tech21's rights under the Lanham Act and California law;

B. Grants Tech21 temporary, permanent, and preliminary injunctive relief;

      C.      Enjoins Spigen, its affiliates, agents, employees, servants, parents, successors, and assigns, and all other persons acting in concert participation or combination with Spigen from using all designs and designations confusingly similar to, or identical to the Tech21 Trade Dress or other Tech21 marks in any manner;

      D.      Awards Tech21 actual damages;

      E.      Awards Tech21 a disgorgement of all profits of Spigen and its affiliates including treble damages;

      F.      Awards the maximum punitive damages available under California law;

      G.      Requires Spigen to pay Tech21's attorneys' fees and costs;

      H.      Grants Tech21 such other and further relief as the Court deems just and proper.

<u>Defendant's Statement</u>: Spigen seeks a judgment that:

      A.      Denies all relief sought by Tech21 UK Limited and Tech21 Licensing Limited in its First Amended Complaint and dismiss Plaintiff's First Amended Complaint with prejudice;

      B.      A judgment in favor of Spigen, including all its defenses and counterclaims;

      C.      A declaration that Spigen has not infringed on any trade dress right, if any, of Plaintiffs Tech21 UK Limited and Tech21 Licensing Limited;

      D.      A declaration that the Alleged Trade Dress at Issue is not protectable because it is not distinctive, has not acquired secondary meaning, and/or because the design of the Trade Dress at Issue is functional;

      E.      A declaration that the mark "TECH" is not protectable and that there is no false designation of origin by Spigen.

      F.      Denies any preliminary or permanent injunction requested by Tech21 UK Limited and Tech21 Licensing Limited against Spigen, Inc.;

      G.      Declares that this is an exceptional case justifying an award of attorneys fees to Spigen, Inc. and against Tech21 UK Limited and Tech21 Licensing Limited in the defense of this action as well as in Spigen's prosecution of the counterclaims against Tech21 UK Limited and Tech21 Licensing Limited in this action;

/ / /

  H. Orders Tech21 UK Limited and Tech21 Licensing Limited to pay all costs associated with this action to Spigen; and

  I. The Court award Spigen, Inc. such other further relief as the Court may deem just and proper.

**XII.** <u>Settlement and ADR</u>: The parties have not yet taken part in any ADR. ADR conference call was held on May 20, 2016 and the parties agreed to mediation.

**XIII.** <u>Consent to Magistrate Judge For All Purposes</u>:

Whether **all** parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment. ____ YES _X_ NO

**XIV.** <u>Other References</u>: The parties do not believe that the case is suitable for reference to binding arbitration, a special master or the Judicial Panel on Multidistrict Litigation.

**XV.** <u>Narrowing of Issues</u>: The parties are open to the possibility of narrowing the issues. However, it is not clear to either party at this point in the proceedings as to which issues might be narrowed.

**XVI.** <u>Expedited Trial Procedure</u>: The parties do not believe that this matter can be handled on an expedited basis with streamlined procedures.

**XVII.** <u>Scheduling</u>: The parties propose the following dates:

| | |
|---|---|
| Trial | September 19, 2017 |
| Final Pretrial Conference | September 12, 2017 |
| Oppositions to Motions In Limine, Objections to Deposition Excerpts and Discovery Responses, Counter-Designations, Objections to Voir Dire and Verdict Forms, Jury Instructions | August 1, 2017 |
| Deadline for Trial Briefs, Motions In Limine, Depositions and Discovery Responses, Proposed Voir Dire Questions, Form of Verdict, Joint Pretrial Statement, Exchange Jury Instructions | July 18, 2017 |
| Deadline for Hearing on Dispositive Motions | June 13, 2017 |
| Expert Discovery Cutoff | April 14, 2017 |
| Rebuttal Expert Reports (reports for issues on which a party does not bear the burden of proof) | March 10, 2017 |
| Opening Expert Reports (reports for issues on which a party bears the burden of proof) | February 3, 2017 |

| | |
|---|---|
| Fact Discovery Cutoff | December 7, 2016 |

**XVIII. Trial**: The matter will be tried to a jury. The expected length of trial is four (4) to five (5) days.

**XIX.   Disclosure of Non-party Interested Entities or Persons**: The parties have filed the "Certification of Interested Entities or Persons" as required by Civil Local Rule 3-16.

**XX.   Professional Conduct**: The Parties are familiar with the Court's rules of Professional Conduct and agree to abide by them.

**XXI.   Other**: The parties do not believe that there are any further matters that may facilitate the just, speedy, and inexpensive disposition of this matter at this time.

Dated: June 2, 2016                                   By:   /s/  Vijay K. Toke

Vijay K. Toke
Matthew S. Slevin
COBALT LLP

David B. Owsley II (admitted *pro hac vice*)
Mari-Elise Gates Paul (admitted *pro hac vice*)
Melissa Hunter Smith (admitted *pro hac vice*)
STITES & HARBISON PLLC

Attorneys for Plaintiffs and Counter-defendants
TECH 21 UK LIMITED and
TECH 21 LICENSING LIMITED

Dated: June 2, 2016                                   By:   /s/  Heedong Chae

Heedong Chae
Attorneys for Defendant and Counterclaimant,
SPIGEN, INC.

JOINT CASE MANAGEMENT STATEMENT AND PROPOSED ORDER

**CASE MANAGEMENT ORDER**

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

Dated:

                                                Hon. Richard Seeborg
                                                United States District Judge

**ATTESTATION OF CONCURRENCE**

I, Vijay K. Toke, attest that I am one of the attorneys for Plaintiffs and Counter-defendants TECH21 UK LIMITED and TECH21 LICENSING LIMITED, an Illinois limited liability company, and, as the ECF user and filer of this document, I attest that, pursuant to United States District Court, Northern District of California Civil L.R. 5-1(i)(3), concurrence in the filing of this document has been obtained from Defendant's and Counterclaimant's counsel Heedong Chae, the above signatory.

Dated: June 2, 2016                          By:   /s/  Vijay K. Toke
                                                    Vijay K. Toke